[Crim. No. 333.   Fifth Dist.   Aug. 4, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOHNNIE RICHARD MOSS, Defendant and Appellant.

Roland V. Howard, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Jack R. Winkler, Deputy Attorney General, for Plaintiff and Respondent.

STONE, J.—Defendant was charged with armed robbery. A deputy public defender represented him at the preliminary hearing and in all matters up to the time of trial. The first day of trial was spent selecting a jury, the next day was a legal holiday, and on the following day when the trial was to resume a hearing was held in chambers, out of the presence of the jury. Defendant's counsel said: ''Your Honor, I would like to make a brief statement. Within the last hour, facts have come to my attention regarding the case which made me change the method in which I intended to present it. I have

relayed these facts to Mr. Moss and Mr. Moss has indicated to me he's dissatisfied with this method and there may exist between us such a disagreement that he would not want me to represent him, and I want to bring that to the Court's attention and give Mr. Moss a chance, if he wishes, to make a motion to relieve me." The court then asked defendant if he intended to represent himself and he said that he did; the court advised him of the seriousness of the charge, the consequences of a conviction, and what would be expected of him if he undertook to represent himself. There followed this dialogue: "THE COURT: In other words, I will not relieve Mr. Minor if there's the slightest doubt in your mind as to whether you want him or not to represent you. THE DEFENDANT: It's nothing between Mr. Minor and myself, it's only the fact that he won't call the witness that I asked him to. That is why I made this statement to him. THE COURT: Well, Mr. Minor is an experienced trial lawyer. He's had this case since the time of your arraignment. I don't know if he represented you in the preliminary hearing or not. THE DEFENDANT: Yes, he did. THE COURT: He's a man trained in law. He's handled quite a few criminal cases here as a Deputy Public Defender, and perhaps he's given you the benefit of his best judgment, which you ought to consider seriously before you release him. THE DEFENDANT: Well, your Honor, this certain witness is the only witness I have in my defense that knows where I was this night and he's wanting to release her and this I don't want to happen and if it means going to the penitentiary, then I'll have to represent myself. THE COURT: Have you reached such a point, Mr. Minor, that you cannot call this witness? MR. MINOR: No, I cannot, your Honor. THE COURT: I don't know who the witness is. I don't know what the testimony will be, but you feel secure that you cannot—— MR. MINOR: Absolutely. THE COURT: ——as an attorney call her? MR. MINOR: No, I cannot. THE COURT: All right. I will then release you. The defendant, Mr. Moss, will represent himself. I want the record to show that Mr. Moss hasn't asked for any other attorneys also, is that correct? THE DEFENDANT: There's none available, I assume. THE COURT: There would be none available and since this jury was impaneled on Tuesday and we held out yesterday because of Columbus Day, we didn't have court. I won't grant a continuance at this late date because the jury is impaneled and ready to proceed. So with that understanding you will be relieved, Mr. Minor."

█  We think the court's categorical denial that a lawyer

was available, without making any inquiry on the point, together with the flat statement that no continuance would be granted, deprived defendant of his constitutional right to be represented by counsel, and brings the case within the ambit of *People* v. *Crovedi,* 65 Cal.2d 199 [53 Cal.Rptr. 284, 417 P.2d 868].

In *Crovedi* the defendant's attorney suffered a heart attack during trial and was unable to proceed. The court refused a continuance for a couple of months until the attorney's expected return to trial work, and appointed the disabled attorney's law partner as defense counsel, over the objection of both Crovedi and the partner. Under these circumstances, the trial was resumed in about three weeks. The Supreme Court held that defendant was denied his right to an attorney of his choice.

Respondent purports to distinguish *Crovedi* upon the ground the defendant there wanted a continuance in order to hire paid counsel of his choice, while here defendant is an indigent with appointed counsel. The distinction between an opportunity to obtain counsel of one's choice and the right to a continuance to obtain assigned counsel is said to be found in cases that follow the reasoning of *People* v. *O'Neill,* 78 Cal.App.2d 888 [179 P.2d 10]. There the defendant sought to change assigned counsel, for no valid reason, and waited until the day of trial to make the request. The facts are clearly dissimilar.

In *People* v. *Massie,* 66 Cal.2d 899, 910 [59 Cal.Rptr. 733, 428 P.2d 869], the court held there was no error in denying a continuance where the defendant Massie sought a change of attorneys and the *"appointment* of some *private counsel.''* The court pointed out that an indigent defendant has the right to assigned counsel but no right to have a *particular* attorney appointed, and made the additional observation that ''Massie alleged no specific reason why the public defender could not adequately defend him.''

This points up the most critical distinction between the *O'Neill* and *Massie* line of cases and this case, namely, that in the cited cases the defendant had no reason for trying to jettison the appointed attorney. Here, the attorney and defendant reached an impasse on a crucial issue: whether to call defendant's chief alibi witness. They deemed the difference so fundamental that both advised the judge the attorney should be relieved of the duty to represent defendant. The deputy public defender told the judge that he had learned of

the circumstance "within the last hour." Thus it is clear that defendant did not contrive a reason for change of counsel in order to get a continuance or, for that matter, to obtain a different attorney.

We believe the basic right to representation by counsel, made so clear by *Gideon* v. *Wainwright,* 372 U.S. 335, 344 [9 L.Ed.2d 799, 805, 83 S.Ct. 792, 796, 93 A.L.R.2d 733], encompasses the right to the appointment of different counsel when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic. When this occurs, the defendant is entitled to a reasonable continuance in order to effectuate a change of attorneys and obtain the representation by counsel he is entitled to have under the Constitution. The United States Supreme Court recently said, in *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926, 1932]: "Of course, nothing decided or said in the opinions in the cited cases links the right to counsel only to protection of Fifth Amendment rights. Rather those decisions 'no more than (reflect) a constitutional principle established as long ago as *Powell* v. *Alabama* [287 U.S. 45 (77 L.Ed. 158, 53 S.Ct. 55, 84 A.L.R. 527)] . . .' *Massiah* v. *United States, supra,* 377 U.S. at 205 [12 L.Ed.2d at 250, 84 S.Ct. at 1202]. It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate the accused's right to a fair trial. The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment. . . ."

Quite aside from the question of representation by counsel, defendant was prejudiced in the presentation of his case by denial of a continuance for a reasonable time in which to organize the presentation of his defense. The basic principle involved is found in *Ungar* v. *Sarafite,* 376 U.S. 575, 589 [11 L.Ed.2d 921, 931, 84 S.Ct. 841] wherein the United States Supreme Court said: "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. [Citation.] Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. [Citation.] There are no mechanical tests

for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'' (See *People* v. *Crovedi, supra,* 65 Cal.2d at pp. 207-208.)

Even an attorney trained in the law would be at a great disadvantage in unexpectedly assuming the burden of conducting a trial already under way. That the defendant experienced this difficulty in taking over the conduct of his own defense on the second day of trial is manifest from the following excerpt from the record:

"THE DEFENDANT: Your Honor, may I have all the things pertaining to my case?

"THE COURT: Anything you have, Mr. Minor, that is pertinent to this case, preliminary examination, result of your investigations, names of your witnesses, the instructions in law, are they in that file?

"MR. MINOR: They are in the file. There are two instructions in there we prepared.

"THE COURT: Because you have to submit them to me to read if they are pertinent.

"MR. MINOR: I don't know whether they will be pertinent now, your Honor. *It will depend on how he handles the case.*

"THE COURT: Of course, I'm not going to tell you now which instructions I'm going to give until I hear this case. Mr. Suydam has given you a copy of his instructions?

"MR. MINOR: He has a copy of this form that you have.

"THE DEFENDANT: Your Honor. I haven't had a chance to subpoena a witness that isn't here today. *You said I had no grounds for continuing this trial.* I assumed that this person would be here. Am I entitled to subpoena this witness in my behalf because the person is a witness to the fact of where I was on this particular night?

"THE COURT: Is the person in the courtroom now?

"THE DEFENDANT: No, she is not.

"THE COURT: Where is she?

"THE DEFENDANT: At home, I guess.

"THE COURT: Where is she?

"THE DEFENDANT: Porterville.

"THE COURT: We can't get anybody from Porterville today.

"THE DEFENDANT: It was my understanding—I had no way to call. I didn't know I was going to have to represent myself. I had no way to subpoena these people.

"THE COURT: Did you know this, Mr. Minor?

"MR. MINOR: I did not know, your Honor, until this morning. This is one of the things that came up at the very last moment I did not know about.

"THE COURT: If you can put in a phone call to her to get her up here—

"MR. MINOR: She's only a child, your Honor.

"THE COURT: What do you mean a child?

"MR. MINOR: His wife's nine-year-old child, your Honor.

"THE DEFENDANT: She testified in the preliminary hearing and it was my understanding all along she was going to be here to testify today.

"THE COURT: If she's not here, I'll permit you to read her testimony that was given at the preliminary hearing. You are entitled to know that. All right. Then let's get this case started." (Italics added.)

The foregoing dialogue, occurring immediately after the court advised defendant there would be no continuance, demonstrates that there was a denial of due process. Defendant was handed the attorney's file and was expected to sort out material he intended to use in the trial without so much as a recess.

We do not discuss defendant's assignments of error in the introduction of evidence and in instructing the jury, since it is apparent these alleged errors occurred because defendant was not represented by counsel.

The judgment is reversed.

Conley, P. J., and Gargano, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 27, 1967.